**2024 UT App 10**

# THE UTAH COURT OF APPEALS

YOUNG H2ORE LLC,
Appellant and Cross-appellee,

*v.*

J&M TRANSMISSION LLC,
Appellee and Cross-appellant.

Opinion
No. 20220003-CA
Filed January 25, 2024

Second District Court, Farmington Department
The Honorable David R. Hamilton
No. 200700063

Robert E. Mansfield, Megan E. Garrett,
Tait A. Meskey, and Nicholas K. Hart,
Attorneys for Appellant and Cross-appellee

Steven G. Loosle, Attorney for Appellee
and Cross-appellant

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES RYAN D. TENNEY and AMY J. OLIVER concurred.

HARRIS, Judge:

¶1     In this case, the parties present us with this question: may a party to a contract opt for the equitable remedy of rescission anytime that party can show that the other party has materially breached the contract, or may that party obtain rescission only upon a showing that it has no adequate remedy at law?

¶2     Prior to November 2019, J&M Transmission, LLC (J&M) leased property from Young H2ORE, LLC (Young). A dispute arose about whether J&M had violated the lease; Young believed that J&M owed it nearly $23,000 in unpaid rent and other damages. The parties eventually agreed to settle their differences

regarding the lease; under the terms of the settlement (the Settlement Agreement), J&M agreed to vacate the premises in some three weeks, by a date certain, and Young agreed to waive its claims for damages against J&M for breaches of the lease. J&M, however, missed the move-out deadline by nineteen days, and Young sued J&M for breach of the Settlement Agreement, claiming that J&M's breach of that agreement—failing to move out on time—had been material, and on that basis sought rescission of the Settlement Agreement and reinstatement of its previously waived claims for breach of the lease.

¶3 In successive summary judgment rulings, the district court ruled that Young could not obtain rescission of the Settlement Agreement because it had an adequate remedy at law: damages for breach of that agreement. The court therefore dismissed Young's claim for rescission but awarded Young $3,996.13 in damages. Young appeals that ruling, asserting that the court should have ordered rescission of the Settlement Agreement and allowed it to sue for breach of the underlying lease.

¶4 The court also awarded both parties some, but not all, of the attorney fees they asked for, concluding that both parties had prevailed on certain issues. In particular, the court awarded J&M $37,506 and Young $5,551. After netting out the various awards, both for damages and for fees, the court ordered Young to pay J&M nearly $28,000. Both parties appeal the court's fees ruling.

¶5 For the reasons set forth below, we vacate the court's summary judgment rulings and remand this case for further proceedings in which the court should reassess Young's claim for rescission in light of the principles set forth in sections 37 and 54 of the Restatement (Third) of Restitution and Unjust Enrichment. We also vacate the court's fee award in light of our ruling vacating the underlying substantive rulings, but we offer some guidance that we hope will be useful as the court reassesses the attorney fees question following reevaluation of the underlying issues.

BACKGROUND

¶6 Prior to November 2019, J&M operated a transmission shop on property that it leased from Young. According to Young, J&M had fallen behind on its lease payments; Young believed that J&M owed $22,851 in "unpaid or underpaid rent payments" accrued after June 2019. The parties agreed, however, to resolve their lease-related disputes out of court, and on November 8, 2019, they entered into the Settlement Agreement.

¶7 Under the terms of the Settlement Agreement, the parties agreed that the lease would "terminate on November 15, 2019." J&M agreed to vacate the premises by that date and to leave the premises "in good condition." But because some of the equipment J&M used in its transmission business was quite large, the parties agreed that J&M would have another fifteen days—until November 30—to remove from the premises "all items associated" with its business. For its part, Young agreed to "waive" its right to collect "any payment from" J&M for breaches of the lease, and specifically agreed to "not take any legal action or collection action against [J&M] for any underpaid or unpaid rent amounts owing or claimed to be owing under the lease." With regard to attorney fees, the parties agreed that, in the event of a breach of the Settlement Agreement, the prevailing party would be "entitled to recover from the other [p]arty all expenses, costs, and attorneys' fees incurred relating to determining, protecting, or enforcing their rights" under the agreement.

¶8 J&M met the November 15 deadline to cease doing business from the leased location; indeed, by November 18—the following Monday—it had already moved its business to a different location (at an asserted expense of $90,000) and had begun operating its business from that location. But J&M did not meet the November 30 deadline for removal of its equipment; it claims that this task proved more difficult than it had anticipated. It was not until December 19, nineteen days after the deadline set forth in the Settlement Agreement, that J&M was able to fully remove all of its equipment from the premises.

¶9 About a month later, in mid-January 2020, Young filed the instant lawsuit against J&M, initially stating two causes of action: (1) for rescission of the Settlement Agreement on the grounds that J&M materially breached that agreement by failing to remove its equipment by November 30, and (2) for damages for breach of the underlying lease, seeking an award of $22,851 in unpaid or underpaid rent. Young's initial complaint did not include a cause of action for damages for breach of the Settlement Agreement.

¶10 After J&M answered the complaint, discovery ensued, during which Young reported that the leased property had not been used since J&M vacated the premises. What's more, Young reported that the building on the property in which J&M had operated its business had since been demolished because it had been "repeatedly broken into." Young anticipated that the entire property would eventually be turned into a parking lot.

¶11 While discovery was still ongoing, J&M filed a summary judgment motion seeking dismissal of both of Young's claims, arguing that Young had no right to obtain rescission because Young failed to plead that it had no adequate remedy at law. At that time, the district court denied J&M's motion, concluding that there were genuine issues of material fact that precluded summary judgment.

¶12 Later, at the conclusion of the fact discovery period, Young requested that it be allowed to file an amended complaint to assert a cause of action for damages for breach of the Settlement Agreement; it asserted that J&M's failure to remove its equipment as agreed had prevented Young from renting the premises to another lessee, and it asserted that its damages (in unrealized rent) for that nineteen-day period were $3,996.13. Young asserted that this amount represented "the fair market rental rate" for the leased premises from December 1 to December 19, plus Young's costs to have the premises cleaned. To support its damages calculation, Young provided supplemental disclosures that contained an expert appraisal of the leased premises (supporting the rent calculation) and a summary of how many hours it took

one of Young's employees to clean the premises, along with the employee's hourly wage. Despite J&M's opposition to the motion, the district court granted Young's request and allowed Young to amend its complaint to state this third cause of action.

¶13   J&M responded in two ways to Young's amendments. First, J&M filed an amended pleading of its own, this time asserting as a "counterclaim" that Young had "breached the covenant not to sue" for breach of the underlying lease, and on that basis requesting "attorney fees and costs incurred in defeating Young's claims to rescind the Settlement Agreement and to recover alleged unpaid rent."

¶14   Second, J&M asked the court to reconsider its prior ruling on J&M's motion for summary judgment. In particular, J&M argued that Young's third cause of action, coupled with its discovery disclosures, further supported J&M's position that Young had no right to rescind the Settlement Agreement because it had an adequate remedy at law: damages for breach of that agreement. Before ruling on J&M's renewed motion, the court requested briefing from the parties on whether the court "has the ability to grant equitable relief when legal relief is available."

¶15   After considering the parties' oral arguments and reviewing the additional briefing, the court granted J&M's renewed motion and dismissed Young's first and second claims for relief. In its written ruling, the court concluded that Young "may not obtain the equitable remedy of rescission if an adequate remedy at law is available in the form of money damages." The court noted that Young's amended complaint included a claim for "money damages" for "breach of the Settlement Agreement," which claim, in the court's view, "undercut[] any contention that [Young] lack[ed] an adequate remedy at law."

¶16   Following the court's ruling, Young was left with one cause of action: its newly pled one for damages for breach of the Settlement Agreement. About two weeks after the court announced its ruling, J&M—pursuant to rule 68 of the Utah Rules

of Civil Procedure[1]—conveyed an offer of settlement to Young. In that offer, J&M agreed to "stipulate to liability for [Young's] claim ($3,996.13) in full satisfaction of all of [Young's] remaining claims . . . and as an offset against [J&M's] claim for attorney fees." J&M was careful to note that its "offer should not be construed as a waiver of [J&M's] claims, including claims for attorney fees."

¶17   About three weeks later, after having heard no reply from Young, J&M's attorney sent an email to Young's attorney noting Young's silence and, on that basis, "presum[ing]" that Young had "rejected" the rule 68 offer. J&M nevertheless offered to "stipulate to all other issues" besides attorney fees, and Young's attorney responded that he did "not have a problem with that plan." J&M thereafter drafted a "Partial Settlement Agreement" in which J&M would "stipulate[] and agree[] to entry of judgment in favor of Young as to Young's remaining claim in the amount of $3,996.13 with judgment to be entered after resolution of all issues concerning entitlement to attorney fees and costs." Young responded by stating that, if J&M "is not willing to accept liability, then the settlement discussions are not going to be fruitful," and by notifying J&M that Young would be "pursu[ing its] own motion for summary judgment" on the third cause of action.

¶18   Young then moved for summary judgment on that cause of action, contending that the facts related to that claim were undisputed and asking the court to enter judgment in its favor in

---

1. Rule 68 of the Utah Rules of Civil Procedure provides that, "[u]nless otherwise specified, an offer made under this rule is an offer to resolve all claims in the action between the parties to the date of the offer, including costs, interest and, if attorney fees are permitted by law or contract, attorney fees." Utah R. Civ. P. 68(a). Under this rule, if a party rejects the offer and ends up receiving an award that is "not more favorable than the offer," the offering party "is not liable for costs, prejudgment interest or attorney fees incurred by the offeree after the offer, and the offeree shall pay the offeror's costs incurred after the offer." *See id.* R. 68(b).

the amount of $3,996.13. In connection with its motion, Young also sought the dismissal of J&M's new counterclaim.

¶19    J&M responded to Young's summary judgment motion in two ways. First, J&M filed a memorandum in response to the motion, asking the court not to dismiss its counterclaim or the parties' dueling requests for attorney fees, but agreeing that judgment for $3,996.13 should enter against it on Young's third cause of action since "the parties already agreed that [J&M] would not contest this claim." Second, J&M filed a motion asking the court to enforce the proposed partial settlement agreement. In that motion, J&M argued that Young's objection to the proposed partial settlement agreement—that it would not agree to it because J&M was not "willing to accept liability"—made "no sense" because the agreement "as drafted concedes Young's remaining claim in full and provides for entry of judgment on the claim, subject only to the [c]ourt making a determination of entitlement to fees and costs before entry of judgment." In J&M's view, Young was choosing to "unnecessarily escalate fees to prosecute a claim that [J&M] do[es] not even contest."

¶20    After oral argument on the pending motions, the court took the matters under advisement but instructed the parties, in the meantime, to submit their respective applications for attorney fees. A few weeks later, after reviewing the fee applications, the court issued a written decision resolving all remaining claims, including the competing fee requests. First, the court denied J&M's motion to enforce the proposed settlement agreement because it "was never signed by either party" and there was no evidence that J&M's offer to settle the matter for $3,996.13 "was accepted by [Young]." Second, the court granted Young's motion for summary judgment on its third claim for breach of the Settlement Agreement, awarding Young $3,996.13. Next, the court dismissed J&M's counterclaim because the "only remedy sought" by J&M was the recovery of attorney fees and because "resolving the question of attorney fees, through this [o]rder, renders the counterclaim moot."

¶21 Finally, the court addressed attorney fees, which it perceived to be the "real issue" in the case. Both sides' fee requests are grounded in the language of the Settlement Agreement, which allows the "prevailing party" to recover fees incurred in "determining, protecting, or enforcing their rights" under the agreement. After considering the totality of the litigation, the court "decline[d] to find that one party [was] the official 'winner,' or that only the party that won more claims or more judgment value on balance should collect fees." The court further remarked that "[b]oth sides were attempting to defend their interests and both sides prevailed in some places and lost in others." Consequently, the court determined that each party was entitled to fees for the claims and issues upon which that party prevailed.

¶22 Concerning Young's amended complaint, the court awarded Young all its fees relating to its third claim—the one for damages for breach of the Settlement Agreement. But the court ruled that J&M was entitled to all its fees relating to Young's first and second claims because J&M had successfully defended against those claims. The court acknowledged the difficulty of calculating fees consistent with these rulings, noting that the applications for attorney fees were not "descriptive of how much time was spent on each claim."

¶23 Given those difficulties, the court decided—on its own, without the suggestion of either side—to separate the fees according to different chronological "phases" of the litigation. The court explained that for "any phase of the case where all three claims were being litigated," J&M should be awarded two-thirds of its fees and Young should be awarded one-third of its fees. The court then provided a detailed breakdown of its calculations and an explanation of each phase. The phases of the litigation, and the respective fees awarded for those phases, were as follows:

- The first phase began with the filing of Young's initial complaint and ended with the filing of its amended complaint, and only involved Young's first and second claims. Since J&M "prevailed on those claims," it was

granted all the fees it incurred during this phase, an amount the court found was $25,074.

- The second phase began when Young's third claim was introduced and ended when the court granted J&M's motion to reconsider, "dismissing [c]laims one and two." During this phase, all three of Young's claims were being litigated; accordingly, the court determined that J&M would "recover two-thirds" of its fees and Young would "recover one-third" of its fees. Using this rubric, the court found that Young should receive $938.47 for this phase and that J&M should receive $7,245.

- The third phase began after the court's order dismissing Young's first two claims and involved litigation of only Young's third claim. The court found that the adjusted award that Young received on that claim—judgment in the amount of $3,996.13—was more favorable than J&M's rule 68 offer, and that Young was therefore entitled to all its fees litigating that claim during this phase. Young's attorney fees for this phase of the litigation amounted to $4,612.75.

- The fourth phase included all litigation regarding entitlement to attorney fees. Each side had presented an argument requesting fees that would "encompass[] all of the claims in the case." Because each side was "only entitled to attorney fees for the claims upon which they prevailed," the court awarded Young one-third of its fees and J&M two-thirds of its fees related to their respective attorney fees arguments. Young's fee affidavit, however, did not indicate "any amount of time" relating to the arguments regarding attorney fees, and therefore the court found the affidavit deficient and declined to award Young any amount for this phase. By contrast, the court found that J&M's affidavit was sufficiently detailed for this phase, and it awarded J&M $5,187.

¶24 Ultimately, using this methodology, the court determined that Young was entitled to attorney fees in the amount of $5,551.22 and that J&M was entitled to fees in the amount of $37,506.00. After offsetting J&M's award by both (a) the amount of fees to which Young was entitled and (b) the amount it owed Young for damages on the third cause of action, the court entered judgment in J&M's favor in the amount of $27,958.65.

## ISSUES AND STANDARDS OF REVIEW

¶25 Both parties appeal the district court's rulings. First, Young appeals the ruling dismissing its first two causes of action on summary judgment. "We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Turley v. Childs*, 2022 UT App 85, ¶ 16, 515 P.3d 942 (quotation simplified).

¶26 Second, both parties challenge the court's attorney fees ruling. Chiefly, the parties take issue with the court's determination that both of them were prevailing parties; each insists that it alone should have been declared the prevailing party. And the parties each raise various challenges to the methodology that the court used for computing the fee awards. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 25, 507 P.3d 357 (quotation simplified). When a contract dictates that fees should be awarded to the prevailing party, "the question of which party prevailed depends, to a large measure, on the context of each case, and, therefore, it is appropriate to leave this determination to the sound discretion of the trial court." *Wihongi v. Catania SFH LLC*, 2020 UT App 109, ¶ 8, 472 P.3d 308 (quotation simplified). Moreover, where the parties fail to define "prevailing party," district courts are "afforded discretion" regarding "prevailing party determinations based on contractual attorney fee provisions." *Id.* ¶ 8 n.2.

ANALYSIS

¶27    We first address Young's challenge to the district court's summary judgment ruling dismissing its first two causes of action. For the reasons discussed, we vacate the court's ruling on this point and remand the matter for reassessment pursuant to principles we set forth herein. And reassessment of the summary judgment ruling will also necessitate reassessment of the parties' entitlement to attorney fees. We therefore reach no final decision on the propriety of the court's ultimate fee award, but we do offer some guidance that we hope will prove useful on remand.

I. The Summary Judgment Ruling: Entitlement to Rescission

¶28    The issue at the center of Young's substantive appeal is this one: under what circumstances may a party obtain rescission of a contract as a remedy for breach? Young asserts that it is entitled to rescission of the Settlement Agreement upon a showing that J&M materially breached it. J&M, on the other hand, asserts that Young can obtain rescission of the Settlement Agreement only if Young can show that it has no adequate remedy at law. The district court agreed with J&M.

¶29    Both sides have Utah case law to back up their positions. Young points to cases stating that "a party to a contract has a right of rescission and an action for restitution as an alternative to an action for damages where there has been a [m]aterial breach of the contract by the other party." *See Polyglycoat Corp. v. Holcomb*, 591 P.2d 449, 451 (Utah 1979); *see also McArthur v. State Farm Mutual Auto. Ins.*, 2012 UT 22, ¶ 28, 274 P.3d 981 (stating that, "if the contract is breached, . . . the non-breaching party retains the right to seek the remedies available for a breach, including, in appropriate circumstances, termination or rescission of the contract," but that "some such remedies . . . are available only upon proof of materiality of the breach" (quotation simplified)); 26 Richard A. Lord, *Williston on Contracts* § 68:2 (4th ed. 2023) ("The right of rescission and an action for restitution . . . generally

exist as an alternative remedy to an action for damages where there has been repudiation or a material breach of a contract.").

¶30    J&M, on the other hand, points to our supreme court's pronouncement that a "claim for rescission is a claim for equitable relief," *see Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987), and to the "general rule" that equitable relief "is precluded if the plaintiff has an adequate remedy at law," *see Ockey v. Lehmer*, 2008 UT 37, ¶ 44, 189 P.3d 51 (quotation simplified); *see also Thorpe v. Washington City*, 2010 UT App 297, ¶ 28, 243 P.3d 500 (emphasizing the "settled" principle "that the law will not imply an equitable remedy when there is an adequate remedy at law" (quotation simplified)). In particular, J&M directs our attention to case law specifically indicating that "the equitable remedy of rescission is inappropriate when a legal remedy such as damages is adequate." *See Orlob v. Wasatch Med. Mgmt.*, 2005 UT App 430, ¶ 28, 124 P.3d 269 (quotation simplified); *accord Coalville City v. Lundgren*, 930 P.2d 1206, 1210 (Utah Ct. App. 1997), *cert. denied*, 939 P.2d 683 (Utah 1997).[2]

---

2. There is one other line of Utah case law that could have relevance in similar situations: the one discussing "executory accord[s]." *See, e.g., Foster v. Montgomery*, 2003 UT App 405, ¶ 24, 82 P.3d 191 (stating that a "settlement agreement[]" may "constitute an executory accord," in which case "the party alleging breach thereof [would have] the option of seeking enforcement of the settlement agreement or of rescinding that settlement agreement and pursuing the underlying claim" (quotation simplified)), *cert. denied*, 90 P.3d 1041 (Utah 2004). Whether an "agreement is an executory accord or whether the accord is itself accepted as satisfaction" of "all rights under the former contract" will depend "on the intention of the parties." *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 733 (Utah 1985). In this case, however, Young does not assert that the Settlement Agreement was an executory accord, and thus the parties agree that the "executory accord" line of cases has no application here.

¶31    These two lines of cases are, as far as we can tell, still good law. Yet on their face, these cases appear to be in potential conflict, at least in situations where a party is both (a) able to show a material breach but also (b) has a perfectly adequate remedy at law. In that situation, which line of cases provides the controlling rule? The "material breach" line of cases would seem to indicate that the party is entitled to elect rescission, regardless of the availability of other remedies, given that it can show that the other party's breach was material. But the "adequate remedy at law" line of cases would seem to indicate the opposite.

¶32    And as far as we are aware, no Utah court has considered the intersection between these two lines of cases. On one occasion, we cited both lines of cases in the same opinion. *See Coalville City*, 930 P.2d at 1209–10. In fact, in this appeal, both Young and J&M cite hopefully to *Coalville City*, each asserting that the case supports its respective position. But in our view, that case does not provide a clear answer to the question at hand.

¶33    The *Coalville City* case involved a settlement agreement between a city and the owner of an "outdoor sign advertising business." *Id.* at 1207. The city alleged that the owner had breached the settlement agreement by failing to remove certain signs that he had promised to remove. *Id.* at 1208. The owner argued that his failure to comply with the agreement was "excused" because the city had failed to follow through with its own responsibilities under the agreement; in his view, the city's noncompliance justified rescission. *Id.* In our analysis, we stated that "the law is well settled that a material breach by one party to a contract excuses further performance by the non-breaching party." *Id.* at 1209 (quotation simplified). And later, we referenced the *Polyglycoat* opinion, and quoted our supreme court's statement there that a "material breach" can "justify rescission." *Id.* at 1210 (quotation simplified). However, we affirmed the trial court's finding that the city's noncompliance did not constitute a material breach. *Id.* On that basis alone, we could have concluded that the owner was not entitled to rescission.

¶34    But our analysis did not end there. Adopting a belt-and-suspenders approach, we went on to state that "the equitable remedy of rescission is inappropriate when a legal remedy such as damages is adequate." *Id.* And we concluded that, under the circumstances presented, "rescission of the entire [agreement] would be inappropriate because damages were sufficient to compensate [the owner] for [the city's] nonmaterial breach." *Id.* We also noted that a "return to the status quo . . . was impossible because [the owner] had enjoyed the benefit of operating his signs for several years" already. *Id.*

¶35    Thus, in *Coalville City* we gave a nod to both lines of cases, and we concluded that the owner of the sign company was not entitled to rescission under either one. But in that case—due to the specific facts presented—it was not necessary for us to reconcile any potential conflict between these two lines of cases.

¶36    While no Utah court has apparently attempted to reconcile these potentially conflicting legal principles, the American Law Institute—the author of various "restatements" of the law—has engaged in that effort. *See* Restatement (Third) of Restitution and Unjust Enrichment [hereinafter, Restatement] §§ 37, 54 (Am. L. Inst. 2011). "The American Law Institute's restatements are drafted by legal scholars who attempt to summarize the state of the law in a given area, predict how the law is changing, and suggest the direction the law should take." *Grundberg v. Upjohn Co.*, 813 P.2d 89, 95 (Utah 1991). And our supreme court has observed that these restatements are "persuasive authority," *see C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 18, 437 P.3d 343, that serve "an appropriate advisory role to courts in approaching unsettled areas of law," *Grundberg*, 813 P.2d at 95; *see also* Shyamkrishna Balganesh, *Relying on Restatements*, 122 Colum. L. Rev. 2119, 2120–21 (2022) (noting that "Restatements of the Law are today ubiquitous and influential sources in the American legal system" and that "[c]ourts in every single U.S. jurisdiction . . . routinely rely on or cite to Restatements in their decisions").

¶37    In this context, the Restatement's approach represents something of a middle ground between the competing legal principles reflected in our lines of case law. Per the Restatement, a party may—sometimes and under certain circumstances—be entitled to rescission as a remedy for the other party's material breach, even if that party might have an otherwise-adequate remedy at law. *See* Restatement § 37. But the Restatement imposes limits on a party's ability to obtain rescission for material breach, and those limits take into account the equities of the situation, including the adequacy of the plaintiff's legal remedies, the extent to which the pre-contractual status quo can be restored, and the "interests of justice." *See id*. § 54; *see also id*. § 37 cmt. a.

¶38    The Restatement's approach is set forth in two separate sections. *See id.* § 54 cmt. a ("In considering the availability of rescission as a remedy for breach of contract, it is essential that §§ 37 and 54 be read together."). Section 37 provides that "a plaintiff who is entitled to a remedy for the defendant's material breach or repudiation may choose rescission as an alternative to enforcement *if the further requirements of § 54 can be met*." *Id.* § 37(1) (emphasis added). However, "[r]escission as a remedy for breach of contract is not available against a defendant whose defaulted obligation is exclusively an obligation to pay money," *id.* § 37(2), presumably because the plaintiff in that situation has an entirely adequate remedy at law: a claim for damages.

¶39    Section 54, in turn, specifies that before rescission can be considered an appropriate remedy, there must usually be an attempt made to achieve "mutual restoration" of the pre-contractual situation, and specifically to "restore the defendant to the status quo ante." *See id.* § 54(2), (3). The drafters note that a "perfect rescission would restore both parties to the status quo ante," but they acknowledge that "restitution to the status quo ante is literally impossible" in most cases. *Id.* § 54 cmt. b. Thus, the "availability of rescission . . . depends partly on the degree to which the parties' performance is capable of restoration," and specifically on "whether the claimant has come close enough to [the] unattainable standard" of restoration. *Id.*; *see also id.* § 37

cmt. a (stating that a plaintiff may obtain rescission as a remedy for material breach "only when unwinding [the transaction] is a practical alternative"). Under this approach, district courts are afforded discretion to determine whether, under the circumstances, "the interests of justice are served by allowing the claimant to reverse the challenged transaction instead of enforcing it." *Id.* § 54(4); *see also id.* § 37 cmt. a (noting that "the practical impossibility of a perfect two-way restoration—and the need to decide in every case how much leeway to permit—means that the availability of rescission depends to an important degree on judicial discretion").

¶40     In our view, the Restatement's approach is a reasonable one that gives voice to both competing lines of Utah case law: it allows a party to obtain rescission as a remedy for material breach in certain circumstances, but it also takes into account the equities of the situation, including the extent to which the status quo is achievable, and including the adequacy of the plaintiff's potential remedy at law.

¶41     Nevertheless, neither Young nor J&M asks us to adopt that approach here. Instead, even after supplemental briefing on the topic,[3] both parties are effectively sticking to their guns, each asking us to rule in its favor based on the line of Utah cases that supports its position. And each maintains that the Restatement's approach is inconsistent with Utah law, although they make different arguments in that regard: Young asserts that the Restatement is inconsistent with Utah law indicating that rescission is available as a remedy for material breach, and J&M asserts that the Restatement is inconsistent with Utah law indicating that rescission is not available when the plaintiff has an

---

3. Neither party cited the Restatement in their appellate briefs. On our own initiative, we brought the Restatement to the parties' attention during oral argument and invited the parties to submit supplemental briefing addressing the Restatement's approach. Both parties took the opportunity to submit such briefing, and we have considered the parties' submissions.

adequate remedy at law. But in our view, that is exactly the beauty of the Restatement's approach: it reconciles the two lines of Utah law in a way that allows them to coexist and allows each to retain a measure of vitality.

¶42 Young makes three arguments in particular that deserve mention. First, Young asserts that the Restatement's incorporation of "status quo" principles—allowing rescission for material breach only when the parties can substantially achieve restoration of the pre-contractual status quo—is at odds with existing Utah law. We disagree, and observe that "status quo" principles have long been a part of Utah law governing availability of rescission. *See Ong Int'l (U.S.A.) Inc. v. 11th Avenue Corp.*, 850 P.2d 447, 457 (Utah 1993) (stating that "[t]he goal of rescission is to restore the status quo that existed prior to the parties' agreement"); *Anderson v. Doms*, 2003 UT App 241, ¶ 11, 75 P.3d 925 (stating that "[r]escission is a restitutionary remedy that attempts to return parties to the status quo"). We do not view Utah law as inconsistent with the Restatement's provisions indicating that the remedy of rescission fits best when the parties can be restored, as closely as possible, to the status quo.

¶43 Second, Young asserts that the Restatement's provisions affording district courts fairly wide discretion to allow—or disallow—rescission in appropriate cases are inconsistent with Utah law, which Young views as setting forth nondiscretionary rules allowing rescission whenever material breach is present. Again, we disagree, and once more refer to our supreme court's decision in *Ong International*, where the court emphasized trial courts' discretionary authority in this context:

> The status quo rule is not a technical rule, but rather it is equitable, and requires practicality in adjusting the rights of the parties. How this is to be accomplished, or indeed whether it can, is a matter which is within the discretion of the trial court under the facts as found to exist by the trier of fact. The trial court therefore has discretion to fashion an

> adequate and reasonable remedy so that an
> aggrieved party is adequately compensated for its
> loss, so long as that remedy is not duplicative.

850 P.2d at 457 (quotation simplified). A rule that affords district courts a measure of discretion in identifying appropriate cases for application of a rescissionary remedy is a rule that is in keeping with—not inconsistent with—Utah law.

¶44    Finally, Young asserts that the Restatement's approach is inconsistent with our supreme court's decision in *Aquagen International, Inc. v. Calrae Trust*, 972 P.2d 411 (Utah 1998). In that case, the court observed that an "uncured" material breach by one party will "relieve[]" the other party "of its duty to continue to perform under the contract." *Id.* at 414. But the breaching party there had failed to perform *at all*, something the court construed as a complete "failure of consideration." *Id.* The court went on to state that "it is entirely permissible for a party to rescind a contract based on a failure of consideration." *Id.* Here, by contrast, Young does not allege that J&M failed to perform its duties under the contract at all, and it does not claim that J&M's behavior—being nineteen days late to vacate the leased premises—constituted a failure of consideration. Accordingly, we do not consider *Aquagen* of much relevance here, nor do we consider that case inconsistent with the Restatement principles we adopt here. *See* Restatement § 54 cmt. b (noting that "there are certain simplified situations in which the potential advantages of rescission over damages . . . appear so evident that a plaintiff is uniformly permitted to pursue either remedy," including cases "involv[ing] breach or repudiation by a defendant who has obtained the plaintiff's performance without tendering any return").

¶45    For all of these reasons, we adopt the Restatement's approach for determining whether a party is entitled to rescission as a remedy for breach of contract. Because the parties did not ask it to do so, the district court did not evaluate the question in this case through the lens of the Restatement principles we adopt here. And we agree with J&M—especially given the discretion the

Restatement's approach affords district courts—that the district court should have the first opportunity to assess this case pursuant to those principles.

¶46 Thus, we vacate the order dismissing Young's first two causes of action on summary judgment, and we remand this case to the district court for reassessment of the "rescission" question in light of these principles.[4] In particular, the district court, on remand, should first assess whether J&M's breach of the Settlement Agreement—its nineteen-day delay in vacating the leased premises—constituted a material breach. If the court concludes that J&M's breach was material, it should proceed to evaluate whether Young is entitled to rescission of the Settlement Agreement—rather than merely damages for breach—pursuant to sections 37 and 54 of the Restatement. Among other things, the court should consider the extent to which the parties can be restored to their pre-settlement positions,[5] whether any exception

---

4. Our decision to vacate the order dismissing Young's first two causes of action also requires us, at least for the time being, to vacate the court's later order granting Young's motion for summary judgment on its third cause of action—the one for damages for breach of the Settlement Agreement—and awarding Young $3,996.13. A vacatur of the court's order regarding Young's third cause of action is required not because we perceive anything specifically wrong with that order—after all, not even J&M contested liability for that amount on that cause of action—but because Young must elect its remedy and, in the event Young is later allowed to rescind the Settlement Agreement, it would in that event not be allowed to *also* recover damages for J&M's breach. We would expect that the court would reinstate its order regarding Young's third cause of action in the event that it does not allow Young to rescind the Settlement Agreement.

5. We note that Young acknowledges, in its supplemental brief, that—presumably because the building J&M previously leased from Young no longer exists—Young "cannot restore [J&M] to their lease or allow them to reoccupy the property."

to the status quo requirement applies, *see* Restatement § 54(3)(a), (b), and whether the interests of justice would be served by allowing Young to rescind the Settlement Agreement instead of enforcing it. In so doing, the court may need to make factual findings on certain matters; whether it can do so on the existing evidentiary record, or whether further hearings or proceedings will be required, is a matter on which we express no opinion.

## II. Attorney Fees Guidance

¶47     The other issue presented to us in this appeal—and the one that, at this point, bears the greatest monetary weight—concerns the district court's attorney fees ruling. In this case, the parties both seek attorney fees pursuant to the Settlement Agreement's attorney fees provision, which provides that, "[i]n the event of breach . . . , the prevailing party shall be entitled to recover" attorney fees. A sizeable portion of the court's attorney fees award was predicated upon its dismissal, on summary judgment, of Young's first two causes of action. We have, for the reasons discussed above, now vacated the court's dismissal of Young's first two causes of action. And because that ruling formed the basis for much of the court's fee award, we must therefore vacate the fee award as well and remand the matter for a new assessment of the fee-related questions following the court's re-evaluation of the merits-related questions.

¶48     But because the parties have briefed various fee-related issues, and because—absent a future settlement between the parties—many of these issues are certain to arise again on remand, we offer some guidance that we hope will prove useful. *See State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867 (stating that, when "there are other issues presented on appeal that will likely arise" on remand, we may "exercise our discretion to address those issues for purposes of providing guidance on remand").

¶49     First, we perceive no abuse of discretion in the court's determination—challenged here by both Young and J&M—that, given the court's various rulings, *both* parties were "prevailing"

parties for purposes of assessing attorney fees awards. As an initial matter, we note that a district court's determination of "whether there is a prevailing party" is reviewed "under an abuse of discretion standard." *Anderson & Karrenberg v. Warnick*, 2012 UT App 275, ¶ 8, 289 P.3d 600 (quotation simplified). We recognize that, in many instances, district courts will by necessity conclude that only one party prevailed in the litigation. *See R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119 ("In most cases involving language similar to the contractual language before us here, there can generally be only one prevailing party."). But courts are to engage in a "case-by-case evaluation," and they have the "flexibility to handle circumstances where *both*, or neither, parties may be considered to have prevailed." *Id.* (emphasis added). And we have, on occasion, affirmed a district court's determination that both parties prevailed in different aspects of a case. *See, e.g.*, *Radman v. Flanders Corp.*, 2007 UT App 351, ¶¶ 26–27, 172 P.3d 668 (concluding that "both parties prevailed," each on various issues, and affirming the district court's award to the parties of those "fees attributable to their successful claims"), *cert. denied*, 186 P.3d 957 (Utah 2008). We have even made such a determination ourselves, regarding fees incurred on appeal, in cases where each party won some issues in the appeal. *See, e.g.*, *Brown v. David K. Richards & Co.*, 1999 UT App 109, ¶ 50, 978 P.2d 470 (observing that, although one party "prevailed on the majority of issues" on appeal, the other party "has also prevailed on several," and concluding that "[e]ach party should be awarded [its] reasonable attorney fees on the issues it won on appeal"), *cert. denied*, 994 P.2d 1271 (Utah 1999).

¶50　We therefore see no abuse of discretion in the district court's conclusion, in this case, that both parties prevailed, each on certain issues, or in its decision awarding the parties those fees incurred in litigating the issues upon which they prevailed. On remand, the district court would be within its discretion to employ that general approach again, in connection with its reassessment of the parties' dueling claims to attorney fees.

¶51    Second, we perceive no abuse of discretion in the district court's overall methodology of dividing up and assessing attorney fees. Again, both parties assail the court's approach and criticize the court for coming up with its own methodology rather than employing one that originated with one of them. As already noted, *supra* ¶ 23, the court divided the litigation into four chronological phases and awarded fees based in large part on which party prevailed in each phase. Upon review, we consider the court's general approach to have been reasoned, flexible, and thoughtful, and one that we would not be inclined to consider an abuse of its wide discretion in such matters should it opt to utilize the same (or similar) methodology on remand.

¶52    Finally, we do discern error in the court's determination that Young was entitled to recover all the fees it incurred in litigating the merits of its third cause of action, the one for damages for breach of the Settlement Agreement. Young's entitlement to fees in this respect turns on whether Young received, from the court, an award "more favorable than" the offer of judgment J&M tendered to Young. *See* Utah R. Civ. P. 68(b). If the award was not more favorable than the offer, then Young is not entitled to recover any fees incurred in further litigating that issue. *See id.* And we know what the award was: the court entered judgment in Young's favor on that claim in the amount of $3,996.13. J&M asserts that the award of $3,996.13 was not more favorable than the offer; it characterizes its offer of judgment as one for precisely that amount. And it argues therefrom that the court necessarily erred in awarding Young all of its attorney fees regarding its third cause of action.

¶53    The district court concluded otherwise, on grounds we consider erroneous. It determined that its award was "more favorable than" J&M's offer because J&M was "refusing to admit any type of fault." But this statement is not borne out by the record—J&M's rule 68 offer of judgment stated that J&M would "stipulate to liability for [Young's] claim ($3,996.13)." In its brief, J&M asks, "What greater acceptance of liability can there be than stipulating to entry of judgment for the full amount of Young's

only remaining claim?" We agree with that sentiment; indeed, we consider an offer to "stipulate to liability" to be the functional equivalent of an offer to "admit fault."

¶54    The district court also presumed, in its ruling, that J&M refused to admit fault "because doing so would impact the attorney fee question." But given the functional equivalence between "stipulating to liability" and "admitting fault," we fail to see how offering to stipulate to liability, but not admitting fault, could possibly help J&M in litigating its attorney fees claim. Moreover, J&M's offer of judgment specifically left all fee-related questions open, and Young understood that. *See id.* R. 68(a) (stating that, "*[u]nless otherwise specified*," an offer of judgment "is an offer to resolve all claims in the action," including claims for "attorney fees" (emphasis added)). Accepting J&M's offer of judgment was intended to resolve only the merits of Young's third cause of action, and it would not have impacted Young's ability to claim attorney fees in the case.

¶55    Under the circumstances presented here, there was no reason for Young to have filed its motion for summary judgment on the merits of its third cause of action. Prior to that filing, J&M had offered to stipulate to liability on that claim and have judgment entered against it in the exact amount Young was later awarded. Under rule 68, as well as principles of common sense, Young should not be entitled to recover the attorney fees it incurred in litigating the summary judgment motion on its third cause of action. Therefore, if that issue arises again on remand, the district court is instructed not to award Young any of the fees it incurred in litigating the substance of its third cause of action after J&M made its rule 68 offer.[6]

---

6. Both parties also seek their attorney fees incurred in connection with this appeal. But given our rulings on the issues presented, any ruling on entitlement to attorney fees incurred in this appeal would be premature. *See Crank v. Utah Jud. Council*, 2001 UT 8,

(continued…)

CONCLUSION

¶56   We adopt the Restatement's approach for determining whether, and when, a party may seek rescission of a contract as a remedy for material breach. Because the district court did not have an opportunity to apply that approach, and because that court should make the relevant evaluation in the first instance, we vacate the court's ruling, made on summary judgment, dismissing Young's first two causes of action, and we remand the case to the district court for further proceedings consistent with this opinion. We also vacate the court's attorney fees ruling and instruct the court to make a reassessment, in keeping with the guidance contained in this opinion, of the parties' dueling attorney fees claims following its renewed ruling on Young's first two causes of action.

———————

¶ 44 n.18, 20 P.3d 307 (stating that, where "[t]he question of entitlement to fees at the [district] court level has not yet been determined, . . . any appropriate award of attorney fees on appeal is dependent upon that determination and should be assessed by the district court on remand"); *Greyhound Lines, Inc. v. Utah Transit Auth.*, 2020 UT App 144, ¶ 56, 477 P.3d 472 (remanding a "district court's award of attorney fees" and therefore also remanding "for a reassessment of both parties' competing claims . . . to attorney fees incurred in this litigation, including attorney fees incurred in this appeal"). The district court should include, in its overall attorney fees reassessment made on remand, a determination as to entitlement to fees incurred in this appeal.