**2024 UT App 51**

THE UTAH COURT OF APPEALS

AMY L. BAILEY,
Appellee,
*v.*
DANNY RAY BAILEY,
Appellant.

Opinion
No. 20220534-CA
Filed April 11, 2024

Second District Court, Farmington Department
The Honorable Michael D. DiReda
No. 094701582

Julie J. Nelson, Attorney for Appellant

Brian E. Arnold, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES RYAN D. TENNEY and AMY J. OLIVER concurred.

HARRIS, Judge:

¶1      In 2019, nine years after her divorce, Amy L. Bailey (Amy) filed a petition to modify the child support provisions of the divorce decree, asserting that her ex-husband Danny Ray Bailey's (Danny)[1] income had significantly increased. The matter proceeded to trial, where the district court sanctioned Danny for noncompliance with pretrial disclosure obligations. Among other sanctions, the court prohibited Danny from presenting any evidence, and from refuting any evidence Amy presented, regarding his income. At the conclusion of this rather one-sided

---

1. Because the parties share the same last name, we refer to them by their first names for ease of reference, with no disrespect intended by the apparent informality.

trial, the court made findings and conclusions regarding Danny's income that Danny believes are inaccurate.

¶2 Danny now appeals those findings and conclusions, as well as the court's underlying sanctions order. Danny asserts that the sanctions order was inappropriate and that he is entitled to a new trial at which he may present evidence regarding his income. We agree with Danny, and therefore vacate the court's modification order and remand the case for a new trial.

BACKGROUND

*The Petition to Modify*

¶3 Amy and Danny divorced in 2010; at that time, the parties were able to reach a negotiated settlement which was later incorporated into a decree of divorce (the Decree). The parties have three children together, all of whom were minors at the time of their divorce; only one of the children was a minor at the time of trial. Under the terms of the Decree, Amy was awarded primary physical custody of the children, and Danny was awarded certain parent-time. Danny is self-employed, and his income for child support purposes was determined to be $8,837 per month. Amy's earnings at that time were determined to be $4,071 per month. Using these income figures, Danny's child support obligation was calculated to be $1,485 per month.

¶4 In 2019, nine years after entry of the Decree, Amy filed a petition to modify, seeking, among other things, a modification of Danny's child support obligation. Discovery and disclosure deadlines were set, with fact discovery scheduled to close in November 2019 and expert discovery scheduled to close in March 2020. The expert discovery deadline passed, and neither party designated any expert witnesses. But in September 2020, Amy filed a statement of discovery issues, asserting that Danny had not disclosed certain financial documents, including his 2019 tax

return, and asking that Danny be ordered to do so. Amy further requested that she be allowed "to designate an expert to opine on the limited issue of [Danny's] expenses versus business expenses." Danny objected to this request, arguing that expert discovery deadlines were "far past" and that Amy "should not be allowed to re-open expert discovery and further extend this matter." After a hearing, the court ordered both parties to disclose their 2018 and 2019 tax returns and associated financial documents to the other, but the court agreed with Danny on the expert disclosure issue, denying Amy's request and stating that it was "not inclined to extend discovery deadlines."

¶5    Eventually, after some delays due to matters not relevant here, the court scheduled a one-day trial regarding the child-support-related issues to occur on November 10, 2021. In its pretrial order, the court ordered that, "at least 28 days before" trial, the parties were to "provide . . . pre-trial disclosures," including "[t]he name . . . of each witness who will be called at trial," "an updated financial declaration," and "copies of their federal income tax returns for the two most recent tax years."

¶6    On November 2, eight days before trial, Danny filed a motion to continue, asserting that he had "been unable to complete his 2020 tax return due to problems with his accounting software," and requesting that the trial be continued so that the parties could "proceed with current and accurate income information." Additionally, Danny brought to the court's attention that, on October 20, just twenty-one days before trial—and notwithstanding the court's previous reticence to extend discovery deadlines—Amy had, "for the first time," identified two expert witnesses that she intended to call at trial. Danny asserted that these disclosures should have been made "within 14 days after the close of fact discovery," which, in this case, was some two years earlier in November 2019. Danny asked the court to bar Amy from calling these witnesses at trial and, alternatively, stated that if the court was inclined to allow Amy to call these experts, he should be afforded "the appropriate disclosures and

discovery opportunities set forth" in rule 26 of the Utah Rules of Civil Procedure. As an added precaution, Danny filed a notice indicating that—contingent on the court's ruling as to their admissibility—he would like "to receive written reports" from Amy's newly-disclosed expert witnesses.

¶7      On the same day Danny filed his request for a continuance, Amy filed an objection. While pressing the court to move forward with the trial as scheduled, Amy simultaneously defended the timing of her expert disclosures. On this point, Amy argued that she was attempting to follow the court's pretrial order, which stated that the list of witnesses that would be called to testify only needed to be provided twenty-eight days before the trial. And, according to Amy, she was doing just that by identifying in her pretrial disclosures the two expert witnesses she intended to call at trial. She argued that these two witnesses were "absolutely necessary" because she intended to rely on "their expert opinion" to demonstrate Danny's "true income and the expenses being reported on his personal and business income taxes."

¶8      Three days later, the court held a hearing on Danny's motion. At the conclusion of the hearing, the court granted Danny's request for a continuance of the trial date and rescheduled the trial to occur on March 1, 2022. The court also indicated that it would allow Amy to call the expert witnesses and it further observed that the continuance would give Danny time to consider whether he wanted to call a rebuttal expert witness of his own. At the conclusion of the hearing, the court noted that the main reason for continuing the trial was so that Danny could complete his 2020 tax return and disclose it to Amy, and it asked the parties whether they wanted to "set a deadline on the tax return." Danny's attorney stated that he'd rather not set a specific deadline, and Amy's attorney didn't argue for one either, stating that he and Danny's attorney had "worked well together on that kind of stuff" and that he didn't think any specific deadline for disclosure of the tax return would be necessary. The court pushed back a bit, asking, "Not a deadline? You're okay just leaving it out

there?" Amy's attorney responded by stating that he was "fine with that." In accordance with the parties' wishes, the court set no specific deadline for Danny's production of his 2020 tax return. The court's previous pretrial order remained in place, however; as noted, it specified that all pretrial disclosures—including recent tax returns—were due "at least 28 days before" trial, which given the scheduled trial date would be February 1, 2022.

¶9     Not long after the November hearing on the motion to continue, Danny's attorney withdrew. Danny then elected to proceed to trial pro se.

¶10    On February 3, less than four weeks before the trial date, the court held a status conference. At the conference, Amy's attorney indicated that he had recently received Danny's newly-completed 2020 tax return—specifically stating that he "just got those the other day"—but that he was still waiting to receive certain bank statements from Danny. In response, Danny—now representing himself—raised certain issues with Amy's disclosures, indicating that he had not received all of her bank account information. After hearing from both parties, the court ordered Danny to provide Amy with the requested bank statements and ordered Amy "to do the same."

¶11    During the status conference, the court also discussed the expert witness issue, and it asked Danny if he "had a chance to speak with or read the report from" Amy's experts. Danny indicated that he had not received any such report. Amy's attorney stated that he believed the report had been provided either to Danny or his previous counsel, but he offered to "resend" the report to Danny just in case.

*The Trial*

¶12    On March 1, the trial proceeded as scheduled, with Danny representing himself and Amy represented by counsel. At the start of the proceeding, before any evidence had been presented,

Danny brought to the court's attention that, two weeks earlier, he had filed an objection to Amy's experts, asking that they be excluded from testifying because he still had not received any reports from them. At this, the court turned to Amy's attorney for an explanation. Amy's attorney this time did not claim that any expert report had ever been disclosed to Danny; instead, Amy's attorney explained that Amy had been unable to "supplement[]" her earlier disclosures with the new experts' reports because Danny had failed to timely provide Amy with financial information—including, most significantly, the 2020 tax return—that the court "had ordered [Danny] numerous times" to disclose. Amy's attorney proposed that if the court was disinclined to allow these witnesses to testify as experts, they could, instead, be allowed to testify as "factual witness[es]" just to "tell [the court] what a line means on a tax return."

¶13    Concerned about possible disclosure failings on both sides, the court asked Amy's attorney whether it was "still the case" that Danny had failed to deliver "the documents, the returns, the information that [the court] ordered be delivered." To this, Amy's attorney responded, "Not timely." Seemingly dismayed at the lack of cooperation between the parties, the court reminded them that the reason it had continued the trial was so that the parties could "exchange documents," yet they had apparently still failed to "timely" comply with its instructions. Addressing Danny, the court stated, "So if you're going to come to me and ask . . . that I exclude a witness, you've got to come in with clean hands. If your hands are soiled because you yourself have not complied with the rule and you've not told me that, that's a problem, because I'm not going to apply the rules unevenly." The court—without Amy making any specific request for a negative-inference sanction[2]—

_____

2. Prior to the trial, Amy had filed a document stating a general objection to Danny's pretrial disclosures, asserting that some of Danny's exhibits had not been disclosed "in a timely manner" and asking the court to enter an order barring Danny from using such

(continued…)

then told Danny that his apparent untimely disclosure of the 2020 tax return was "a problem that leads [the court] to think that perhaps a negative inference should be drawn against you . . . because why wouldn't you just turn over the information that is critical to the [c]ourt's determination on income since this is an income case?"

¶14　Before ruling on the matter, the court wanted to know how much time had elapsed between the completion of Danny's 2020 tax return and Danny's disclosure of that return to Amy. Danny indicated that "[p]robably two months" had elapsed between completion and disclosure. The court then asked, "Why wouldn't you have just disclosed [the return] immediately once you had them done? Why did you wait two months to disclose [it]?" Danny explained that he was looking for new counsel at that time and that his understanding was that his "obligation was to supply" those documents with his pretrial disclosures, twenty-eight days before trial, which he did. Danny also reminded the court—twice—that, at the conclusion of the November hearing, no specific deadline for disclosure of the tax return had been set. The court then, without prompting from Amy's attorney, began to read from rule 26 of the Utah Rules of Civil Procedure, stating to Danny that, as soon as he learned that his disclosure was "incomplete," he was required to "timely serve on the other parties the additional or correct information."

¶15　After allowing both sides to argue the matter, the court determined that "at the end of the day," Danny was the one who "didn't disclose timely." The court therefore told Danny that Amy "couldn't have given you a full expert report, because you hadn't given them the predicate information that was needed so the expert could do his or her job."

---

exhibits at trial. Neither in that document nor at trial did Amy ask for a negative-inference sanction (at least not until after the court brought it up on its own).

¶16 After a recess to allow the parties one last opportunity to negotiate, the court considered what, if any, sanction should be imposed on Danny for his apparent untimely disclosure of his 2020 tax return. The court believed that it could impose any of the sanctions set forth in rule 37(b) of the Utah Rules of Civil Procedure. After argument, the court determined it would be "inequitable" to allow Danny "to go forward and argue" what he thought his income should be when he "deprived the other side of [the] complete and accurate financial information that their [experts] needed in order to present a complete picture" of Danny's finances. It therefore ordered that, during the trial, Danny would be prohibited from refuting any evidence that Amy introduced about Danny's income, and he would not be allowed "to introduce [his] own evidence in support of what [he] believe[d]" his income should be. Basically, the only thing that Danny would be able to do at trial would be to present or challenge evidence presented related to Amy's income.

¶17 Concerning Amy's experts, the court determined it would be appropriate to allow them to testify as fact witnesses. Amy ended up calling only one of the two expert witnesses she listed in her pretrial disclosures, a forensic accountant (Accountant). At the beginning of his testimony, Accountant was reminded that he was not permitted to give "expert opinion" because he would, as Amy's counsel described it, be a "factual witness."

¶18 During his direct examination, Accountant was presented with exhibits containing Danny's tax returns—including his 2020 tax return—and other financial documents and was asked questions concerning those documents. For example, Accountant was asked about the purpose of lines "28 A and B" on one of the forms, and he responded, "Those are there to present to the IRS sources of income from businesses that the taxpayer owns." At another point in the trial, Accountant was also asked whether the W-2 wage on another form was for Danny or if it was "a qualified deduction" from Danny's company. Accountant responded it was "neither," and that "the income from the business" would be

different from the amount represented on the form "because [it] specifically calculates adjusted income for [that] specific tax deduction." Direct examination of Accountant continued in this fashion, with him testifying about several line items contained in Danny's tax returns and what information should or should not be contained therein.

¶19     Amy was the only other witness to testify at trial. After submission of the evidence, Amy's attorney made a closing argument. The court then went back and forth with Amy's attorney, discussing the various figures that had been presented and what implications they might have on the calculation of child support arrearages going back to the date Amy filed her petition. After completing the calculation, the court made an oral ruling that, for child support purposes, Danny's monthly income was $42,555 (as opposed to $8,837 under the original Decree) and that Amy's monthly income was $6,265 (as opposed to $4,071 under the original Decree). Based on those figures, the court then calculated Danny's ongoing child support obligation, as well as arrearages owed dating back to the month after Amy filed her petition to modify. Specifically, the court determined that Danny owed Amy $108,027 in back child support. Because of the "sizable back child support due and owing," the court declined Amy's request for attorney fees. A few weeks later, the court entered a written order memorializing its oral ruling.

ISSUES AND STANDARDS OF REVIEW

¶20     Danny now appeals the court's modification order. In particular, Danny challenges the court's findings and conclusions regarding his own monthly income, and he asserts that the court's determinations in that regard are infirm because it improperly sanctioned him and did not allow him to present evidence supporting his position or refuting Amy's position on that issue. Thus, Danny's appeal centers on the court's application of Utah rules regarding discovery, disclosure, and sanctions.

¶21   A district court's interpretation of the Utah Rules of Civil Procedure is reviewed for correctness. *Hansen v. Kurry Jensen Props. LLC*, 2021 UT App 54, ¶ 19, 493 P.3d 1131. For this reason, a court's decision regarding the adequacy of a party's disclosures is reviewed for correctness. *See Butler v. Mediaport Ent. Inc.*, 2022 UT App 37, ¶ 17, 508 P.3d 619 (stating that "we review for correctness the district court's conclusion that [a party's] disclosures were inadequate, because that determination is at root a question of interpretation of" the applicable rules).

¶22   But when a district court's interpretation of the applicable rules is correct, we extend "a great deal of deference" to the court's decisions regarding its choice of sanctions, and we will only disturb such rulings "if abuse of discretion is clearly shown." *Raass Bros. Inc. v. Raass*, 2019 UT App 183, ¶ 11, 454 P.3d 83 (quotation simplified). Similarly, we review deferentially a "district court's decision to admit or exclude evidence," including its "determination regarding the admissibility of expert testimony" for an abuse of discretion. *Northgate Village Dev., LC v. City of Orem*, 2019 UT 59, ¶ 14, 450 P.3d 1117 (quotation simplified). A court's determination that a witness's testimony is "not expert testimony" is similarly reviewed for an abuse of discretion. *State v. Rothlisberger*, 2006 UT 49, ¶ 8, 147 P.3d 1176.

## ANALYSIS

¶23   Danny's primary challenge on appeal concerns the district court's imposition of sanctions, which he contends were unwarranted. For the reasons discussed herein, we find merit in Danny's position, and agree that the court erred by imposing rule 37 sanctions on Danny.

¶24   There are two different rules of civil procedure that concern discovery sanctions: rule 26 and rule 37. These two rules, "although couched in different terms," are both "aimed at encouraging good faith compliance with the discovery

obligations imposed under the rules of civil procedure and both provide the court with the authority to sanction those who fail to live up to the requirements of those rules." *PC Crane Service, LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 34, 273 P.3d 396. But despite certain commonalities, the sanctions available pursuant to these rules are different and have distinct prerequisites.

¶25 The sanctions that a court may impose pursuant to rule 26(d) are narrow, but they are also "automatic and mandatory" when the prerequisites are met. *See Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, ¶ 48, 476 P.3d 542. That rule provides, in relevant part, as follows:

> (4) If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure.

> (5) If a party learns that a disclosure or response is incomplete or incorrect in some important way, the party must timely serve on the other parties the additional or correct information if it has not been made known to the other parties. The supplemental disclosure or response must state why the additional or correct information was not previously provided.

Utah R. Civ. P. 26(d)(4), (5).[3] Thus, when a party fails to comply with rule-based disclosure requirements, that party is

---

3. An earlier version of rule 37 contained a provision similar to rule 26(d)(4). *See* Utah R. Civ. P. 37(h) (2013). That provision was deleted in 2015, apparently because the drafters considered it redundant. *See id.* R. 37 advisory committee notes to 2015

(continued…)

"presumptively barred" from relying on that witness, document, or material at trial. *See Dierl v. Birkin*, 2023 UT App 6, ¶ 31, 525 P.3d 127, *cert. denied*, 527 P.3d 1107 (Utah 2023). A party seeking sanctions under rule 26(d)—usually a party whose litigation opponent has failed to timely disclose a required item—does not need to file a motion for sanctions and obtain a court order beforehand; rather, sanctions under this rule are "automatic and mandatory" and do "not require a predicate discovery order." *Eskamani*, 2020 UT App 137, ¶¶ 47–48. Courts should, upon request, presumptively impose sanctions for noncompliance unless "the party seeking relief from disclosure requirements" can demonstrate that its noncompliance was harmless or excused by good cause. *Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20, ¶ 18 & n.7, 445 P.3d 434; *see also* Utah R. Civ. P. 26 advisory committee notes (stating that sanctions are "the usual and expected result" of noncompliance).

¶26 But the sanctions available under rule 26(d) are narrow and specific: a party who fails to comply with rule-based disclosure obligations, and who cannot show harmlessness or good cause, "may not use the undisclosed witness, document, or material at any hearing or trial." *See* Utah R. Civ. P. 26(d)(4). Rule 26, by itself, does not speak of or authorize any other sanction.

¶27 Rule 37, by contrast, is not self-executing: a party wishing to take advantage of its more expansive sanctions menu must first obtain a discovery order from the court. Subsection (a) of that rule allows a party to "request that the judge enter an order regarding any discovery issue." *Id.* R. 37(a)(1). And subsection (b) allows a "court, upon motion, [to] impose appropriate sanctions *for the failure to follow its orders*." *Id.* R. 37(b) (emphasis added).

---

amendment ("Former paragraph (h), which prohibited a party from using at a hearing information not disclosed as required, was deleted because the effect of non-disclosure is adequately governed by Rule 26(d)."). In the rules' current iteration, this language appears only in rule 26(d)(4).

Interpreting the language of this rule, we have recently held that imposition of sanctions under rule 37 is available only for violation of a specific court order. *See Eskamani*, 2020 UT App 137, ¶ 49 ("Unlike rule 26, rule 37 conditions the availability of discovery sanctions upon the failure of a party to follow a discovery order.").

¶28    But rule 37 offers a wide variety of sanctions options, and it allows for sanctions that can be more severe than the sanction authorized under rule 26. Where the violation in question is disobedience of a court order (as opposed to noncompliance with a rule-based disclosure requirement), rule 37 authorizes a court to (among other things) "deem [a] matter . . . to be established," give an "adverse inference" instruction, order attorney fees, hold a party in contempt, or even dismiss a party's claim or defense. *See* Utah R. Civ. P. 37(b)(1), (4)–(7). As relevant here, a court may also opt to "prohibit the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters into evidence." *Id.* R. 37(b)(2).

¶29    In imposing sanctions on Danny, the district court applied rule 37. It read subsection (b) of that rule to Danny, and then walked the parties through the sanctions options provided by rule 37(b). After discussion, and after a brief break to allow additional negotiations, the court told Danny that he would not be "permitted to refute" any evidence Amy presented regarding his income, and that he would not "be permitted to introduce [his] own evidence in support of what [he] believe[s his own] income should be." This is one of the sanctions listed in rule 37(b). *See id.*

¶30    But under these circumstances, this sanction was improper. Rule 37 is properly invoked only for violation of a court order, *see id.* R. 37(b); *Eskamani*, 2020 UT App 137, ¶ 49, and Danny was not in violation of any court order. The only potentially applicable order is the pretrial order that commanded the parties to disclose their trial exhibits—including, significantly, their latest tax returns and other updated financial information—at least

twenty-eight days prior to trial.[4] Danny complied with this order when he submitted his 2020 tax return on or before February 1, 2022—which was at least twenty-eight days prior to the scheduled March 1 trial date.[5] And on appeal, at least, Amy makes no argument to the contrary.[6] In the absence of any evidence that Danny was in violation of a court order, the court was not permitted to impose sanctions on Danny pursuant to rule 37.

---

4. Recall that the court itself—at the hearing at which it ordered a continuance of the November trial date—had been inclined to order a specific deadline for Danny's disclosure of the belatedly prepared 2020 tax return, but ended up not doing so after both attorneys asked the court not to impose any deadline.

5. This pretrial order was also in place in advance of the scheduled November 2021 trial date, and Danny was—at least temporarily—out of compliance with that order when he failed to hand over his 2020 tax return within twenty-eight days of the November trial date. He explained, however, that he was unable to generate the tax return because of software issues, and on that basis the court continued the November trial date, rescheduling the trial for March 2022. This continuance had the effect of curing Danny's temporary noncompliance with the court's pretrial order; as noted, Danny fully complied with it as it relates to the March 2022 rescheduled trial date.

6. At trial, Amy's attorney represented to the court that Danny's disclosure of the 2020 tax return had been "[n]ot timely." As discussed below, we generously interpret this as an allusion to Danny's obligation to timely supplement his rule 26 disclosures. *See* Utah R. Civ. P. 26(d)(5). To the extent that this comment represented an assertion that Danny's disclosure violated a court order, that assertion was inaccurate. Indeed, on appeal, Amy concedes that Danny produced his 2020 tax return to her "twenty-nine (29) days before trial."

¶31 Danny's sin, as perceived by the district court, was not the violation of any specific court order. Instead, the court was apparently upset with Danny for waiting some two months after the belated completion of his 2020 tax return to provide a copy of that return to Amy. This action was arguably a violation of rule 26(d)(5), which commands parties to "timely" supplement their initial disclosures. *See* Utah R. Civ. P. 26(d)(5).[7] Courts certainly have authority to punish untimely supplementations. But such punishment must be imposed pursuant to rule 26(d) and not—in the absence of a violation of a court order—pursuant to rule 37(b).

¶32 Under rule 26(d), the court could have penalized Danny for his two-month disclosure delay, but any such penalty should have been limited to preventing Danny from "us[ing]" the 2020 tax return "at any hearing or trial." *See id.* R. 26(d)(4). Even if we

---

7. Conduct similar to Danny's might, under some circumstances, also be a violation of rule 26.1(f), which provides that a party's "[f]ailure to disclose all assets and income in the Financial Declaration and attachments" in a domestic relations action "may subject the non-disclosing party to sanctions under Rule 37." *See* Utah R. Civ. P. 26.1(f). Indeed, Amy invites us to affirm the court's sanctions order on this basis. We decline this invitation because, in our view, this alternative ground for affirmance is not apparent on the record. *See Pentalon Constr., Inc. v. Rymark Props., LLC*, 2015 UT App 29, ¶ 25, 344 P.3d 180 ("We will not affirm a judgment if the alternate ground or theory is not apparent on the record." (quotation simplified)). As an initial matter, this argument is unpreserved; at trial, there was no discussion of rule 26.1 from any party or from the court, and there is no indication in the record that the court intended to base its sanction on rule 26.1(f). Moreover, it is far from apparent to us that the language of rule 26.1(f) authorizes rule 37 sanctions in the absence of a court order; certainly, Amy has not persuaded us that this is the case, especially given the plain language of rule 37(b) and our case law. *See, e.g.*, *Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, ¶ 49, 476 P.3d 542.

were to assume, for purposes of the discussion, that under rule 26(d) the court properly barred Danny from introducing that document on his own account, we are aware of no rule or authority that would allow the court to bar him from introducing other properly disclosed evidence about his income, or from attempting to rebut evidence about his income that Amy introduced at trial. In this vein, we note that, during her evidentiary presentation at trial, Amy introduced Danny's 2020 tax return into evidence; Danny should not have been barred from engaging with that evidence once Amy voluntarily elected to introduce it. Thus, under the circumstances, the district court's sanctions order was improper and unduly punitive.

¶33    And in this situation, the court's improper sanctions order prejudiced Danny. Prejudice is demonstrated when a party shows that the court's error "impacted the outcome of the dispute." *In re Western Ins. Co.*, 2022 UT 38, ¶ 55, 521 P.3d 851. In other words, a party is prejudiced if "there is a reasonable likelihood that, absent the error, the result would have been different." *Id.* (quotation simplified). Danny asserts that his income is actually less than half of what the court found it to be after the one-sided evidentiary presentation, and he argues that, had he been able to present evidence as to his income, the court would not have made the same determination in that regard. Danny asserts that, if he had not been sanctioned, he would have presented (among other things) his earlier tax returns and evidence regarding his "necessary business expenses," and would have been able to demonstrate that certain income had been improperly attributed to him. Danny plausibly contends that this would have likely made a difference, and here on appeal, Amy makes no argument to the contrary. And it appears that the district court more or less agreed with this notion, at one point stating that the sanctions imposed were "almost the equivalent of a default."

¶34    In sum, then, the court entered an improper and unduly punitive sanctions order against Danny. That order prejudiced Danny because it prevented him from meaningfully engaging

with the court and with Amy on the subject of his own income; absent the sanctions order, we think the court likely would have reached a different conclusion regarding Danny's income. Accordingly, we vacate not only the court's sanctions order but also its modification order (the order containing its findings regarding Danny's income), and we remand this case to the district court for a new trial on Amy's petition to modify.

¶35    Our opinion could end here. But we elect to address one of Danny's other criticisms of the court's handling of Amy's petition to modify, in the hope that our guidance on this issue might prove useful on remand. *See State v. Ogden*, 2018 UT 8, ¶ 49, 416 P.3d 1132 ("Although it is unnecessary to our decision, we retain the authority to reach issues when we believe our analysis could prove helpful on remand."); *see also Young H2ORE LLC v. J&M Transmission LLC*, 2024 UT App 10, ¶ 48, 543 P.3d 1264 (electing to "offer some guidance that we hope will prove useful" on remand where the issues in question "are certain to arise again").

¶36    Danny asserts that the court acted improperly when it allowed Accountant to testify at trial as a "factual witness."[8] We agree with Danny that Accountant's testimony was improper.

¶37    After Amy made a late designation of expert witnesses (which the court eventually authorized Amy to do), Danny asked for a report from those witnesses, including Accountant, in lieu of taking their depositions. But despite certain initial incorrect

---

8. Danny also complains that Amy never submitted initial disclosures, and that—despite a court order—she did not produce any documentation about a second source of income (rental properties). As near as we can tell from the record, Danny's complaints are accurate. We see no need for further discussion of them here, however; Danny remains free to seek relief from the district court regarding these issues on remand.

representations from Amy's attorney to the contrary, Amy never provided Danny with any report from Accountant.

¶38 Expert witnesses from whom reports have been requested should not be allowed—absent a showing of good cause or harmlessness—to testify about matters not "fairly disclosed in" the requested reports. *See* Utah R. Civ. P. 26(a)(4)(B) (stating that expert witnesses "may not testify in a party's case-in-chief concerning any matter not fairly disclosed in the report"); *id.* R. 26(d)(4); *see also R.O.A. Gen., Inc. v. Chung Ji Dai*, 2014 UT App 124, ¶ 11, 327 P.3d 1233 (stating that, "where it is undisputed that an expert witness report has been untimely filed, the proper inquiry is whether" the party's failure to timely submit the report was "harmless" or excused by "good cause" (quotation simplified)), *cert. denied*, 337 P.3d 295 (Utah 2014). It follows, then, that an expert from whom a report has been requested but who has not provided one should not be allowed to testify at all, absent a finding of good cause or harmlessness, since nothing was "fairly disclosed" in any report. *See* Utah R. Civ. P. 26(a)(4)(B).

¶39 In this case, the district court allowed Accountant to testify, despite the fact that Accountant never provided an expert report to Danny. The court allowed this, at Amy's request, on the ground that Accountant would not be asked to offer any expert opinion as to Danny's income but, instead, would merely be "a factual witness" who would offer testimony about "what a line means on a tax return." But the court never engaged in any analysis of whether Amy's failure to provide an expert report from Accountant should be excused for "good cause." *See id.* R. 26(d)(4). While Danny's two-month delay in supplementing his initial disclosures with his 2020 tax return may have provided some cause for Accountant's inability to timely form opinions regarding Danny's post-2019 income, neither Amy nor the court ever offered an explanation as to why Danny's delay in disclosing his 2020 tax return provided any cause for Accountant's failure to provide a report containing opinions about what line items on a tax return mean.

¶40 And we are not persuaded by Amy's effort to characterize this kind of testimony as "fact testimony." As an initial matter, even fact witnesses have to be disclosed in a timely manner, and—although Amy did obtain permission to make a late *expert* designation of Accountant—Amy did not disclose Accountant as a fact witness in a timely manner. Any such disclosure should have been made in Amy's initial disclosures, in order to give Danny the opportunity to depose (or seek other discovery from) the witness. It is not proper, absent specific leave of court, for a party to disclose a fact witness for the first time in connection with its final pretrial disclosures. After all, witnesses and exhibits disclosed in final pretrial disclosures are intended to be merely a subset of the witnesses and exhibits already disclosed earlier in the case. *See Ader v. SimonMed Imaging Inc.*, No. CV-17-02085, 2020 WL 13442907, at *2 (D. Ariz. Sept. 22, 2020) (stating that, "[t]ogether, initial and supplemental disclosures reveal the full universe of potentially relevant evidence for every claim or defense," and that in preparation for making final pretrial disclosures, the parties must then "sift through" that earlier-disclosed evidence to arrive at a "narrowed universe" of evidence "aimed at *trial* preparation"). Allowing a party to use its pretrial disclosures to introduce new evidence and new witnesses would therefore be contrary to the very purposes of rule 26. *See Johansen v. Johansen*, 2021 UT App 130, ¶ 18, 504 P.3d 152 (stating that where a party's pretrial disclosures, submitted only "28 days before trial," identified for the first time the witnesses that the party intended to rely on at trial, that disclosure was contrary to "the purpose of rule 26, which is to preclude parties from trying to gain an advantage by offering 'surprise' testimony at trial that has not been properly disclosed" (quotation simplified)); *see also In re Morrissey*, No. AP 20-2045, 2022 WL 666803, at *5 (Bankr. D. Utah Mar. 4, 2022) (noting that if a party "were permitted to treat the [pretrial disclosure] deadline as though it were the [initial disclosure] deadline, it would completely undermine the purposes of" the rule governing initial disclosures).

¶41　But more to the point, the testimony that Accountant ended up giving at trial was not fact testimony; it was expert testimony. A "fact witness" is someone "who has firsthand knowledge of something based on the witness's perceptions through one [or] more of the five senses." *Fact Witness*, Black's Law Dictionary (11th ed. 2019). "Lay fact testimony"—which is the type of testimony that the district court and Amy assert that Accountant provided—is "factual testimony not based on scientific, technical, or other specialized knowledge." *State v. Rothlisberger*, 2006 UT 49, ¶ 11, 147 P.3d 1176; *see also Warenski v. Advanced RV Supply*, 2011 UT App 197, ¶ 8, 257 P.3d 1096 (stating that testimony that is "clearly based on scientific, technical, or other specialized knowledge" should be considered as "expert testimony rather than fact testimony" (quotation simplified)), *cert denied*, 268 P.3d 192 (Utah 2011). A fact witness is thus only allowed to "testify in the form of fact or opinion" if the testimony "is helpful to the finder of fact" and is within the witness's "personal knowledge or perception." *State v. Sellers*, 2011 UT App 38, ¶ 26, 248 P.3d 70; *see also* Utah R. Evid. 701.

¶42　Here, Accountant had no firsthand knowledge concerning the family in general or about Danny's income in particular, yet he was presented with various financial exhibits, including Danny's tax returns, and was allowed to offer testimony about them. Amy's attorney then questioned Accountant about certain line items in those documents. At one point, for instance, Accountant explained how a wage on a W-2 form was neither for Danny nor was it "a qualified deduction" from Danny's company, because "the income from [Danny's] business" would be different from the amount represented in the form which "specifically calculates adjusted income for [that] specific tax deduction." We have no difficulty concluding that this sort of testimony was expert testimony, not fact testimony, because it was based not on Accountant's own personal observations but, instead, on his "technical" and "specialized knowledge." *See* Utah R. Evid. 701.

¶43  Accountant should not have been allowed to provide this sort of testimony under these circumstances. Despite the court's stated intention not to "apply the [discovery] rules unevenly," in our view that is exactly what happened here. The court imposed an inappropriately severe sanction on Danny, while at the same time allowing Amy to offer undisclosed expert testimony. We trust that, on remand, these errors will be corrected.

CONCLUSION

¶44  Because Danny did not violate any discovery or disclosure order, the court's effort to sanction him pursuant to rule 37 was improper. In addition, the court erred by allowing Accountant to offer expert testimony without having provided a requested expert report. We therefore reverse the imposition of sanctions on Danny, vacate the court's order modifying the Decree, and remand the matter to the district court for a new trial.